[Civ. No. 27269.    Second Dist., Div. Four.    Jan. 9, 1964.]

AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff and Respondent, v. UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING CERTIFICATES LC 26999, 27001 AND 27002, Defendants and Appellants.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Defendants and Appellants.

Jarrett & Morgan, Frank W. Woodhead and Henry F. Walker for Plaintiff and Respondent.

KINGSLEY, J.—This is an appeal from a judgment in a declaratory relief action determining the respective obligations of several insurers to satisfy the liability of an operator of a motor vehicle for bodily injury and property damage due to an automobile accident.

On September 29, 1956, Harvey L. Snyder, an employee of Dilectron and Gudeman companies, on behalf of his employer, rented a truck from its owners, Harry and Rachel Fox doing business as Equip Rent Company. While using the rented vehicle in the course of his employment, Snyder collided with a vehicle operated by Mary Contreras, which vehicle in turn collided with one owned and operated by Israel Shahon. As a result of this collision, Mary Contreras, by her guardian ad litem, commenced an action in the Superior Court for the County of Los Angeles, for damages for bodily injuries, and named as defendants, Harvey L. Snyder, Gudeman Company and Harry and Rachel Fox doing business as Equip Rent Company. American Motorists Insurance

Company (hereinafter American), the insurer of Snyder's employer, retained counsel who undertook the defense of Snyder and his employer; Certain Underwriters at Lloyd's London (hereinafter Underwriters), the insurer of Equip Rent, retained other counsel who undertook the defense of Harry Fox and Rachel Fox and Equip Rent Company.

The Contreras action proceeded to trial and resulted in a judgment in favor of the plaintiff in the sum of $35,000 against Snyder and his employer and $5,000 against Equip Rent Company plus costs in the amount of $274.30. The Contreras judgment was satisfied by the payment of $35,914.02, of which American paid $30,457.01, and Underwriters paid $5,457.01. This payment was pursuant to a written agreement between the insurers preserving and protecting the rights of the insurers to later litigate their respective legal positions.

Thereafter, the collision carrier for Israel Albert Shahon, as subrogee of his interest, commenced an action in the municipal court for damages to his automobile, naming as defendants Snyder and Equip Rent. This claim was settled for a total payment of $1,000, of which American contributed $500 and $500 was contributed by Underwriters. This settlement was also pursuant to a written agreement preserving the rights of the insurers to later litigate their legal liability.

Snyder's liability was imputed to his employer by reason of the doctrine of *respondeat superior*; and his liability to the extent of $5,000 for personal injuries and $5,000 for property damage was imputed to Equip Rent by the terms of section 402 of the Vehicle Code as in force at the date of the accident.[1] However, Snyder's employer was entitled to be indemnified by Snyder for the liability imputed to it (*Popejoy* v. *Hannon* (1951) 37 Cal.2d 159 [231 P.2d 484]); and, under former Vehicle Code section 402, Equip Rent was entitled to indemnification from Snyder for the liability imputed to it.[2] The insurers for the employer and for Equip Rent succeed to the indemnification rights of their respective insureds. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914].) It follows that the question before us is to determine, (a) which insurer or insurers covered the liability of Snyder and, (b) if there be more than one such insurer, in what proportion they must bear his liability.

[1] Now Vehicle Code, sections 17150 and 17151. (The amounts of imputed liability were increased by Stats. 1963, ch. 403.)

[2] Now Vehicle Code, section 17153.

American's policy, issued to Snyder's employer, granted coverage of $100,000 for personal injury and $50,000 for property damage. It defined "insured" as follows: "The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile ... provided the actual use of the automobile is by the named insured or with his permission ..." It is undisputed that Snyder was an additional insured under this policy.

Equip Rent was the named insured under policies LC 26999, 27001 and 27002, issued by Certain Underwriters at Lloyd's London. LC 26999 provided coverage of $5,000 personal injury damage and $5,000 property damage. LC 27001 provided excess insurance over policy LC 26999, and policy LC 27002 provided excess insurance over policies LC 26999 and 27001. LC 26999 defined insured as follows: "It is understood and agreed that the unqualified word 'Assured' wherever used in this Certificate, includes not only the Named Assured, but also ... (2) any person while using a [n] ... owned automobile, ... provided the actual use is with the permission of the Named Assured." It is undisputed that Snyder was an additional insured under policy LC 26999. However, LC 27001 and LC 27002 specifically excluded rentees. As will be pointed out later, the validity of this exclusion is one of the issues on appeal.

The American policy and LC 26999 each contain a provision in the event of other insurance. The "other insurance" clause in the American policy provides: "If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any valid and collectible insurance.*" (Italics added.)

The "other insurance" clause of LC 26999 provides: "It is further understood and agreed that coverage on Automobiles (other than Trailers), afforded by this Certificate, *to others than the Named Assured, as Additional Assureds,* shall be deemed to be Excess Insurance over any other valid

and collectible Insurance, and if there be other valid and collectible Insurance in effect which, but for the existence of this policy, would cover the interest of said Additional Assured, then the protection afforded said Additional Assured under this Certificate shall not attach until the amount of said valid and collectible Insurance has first been exhausted.'' (Italics added.)

The trial court in the declaratory relief action determined that the truck was a hired automobile insured on a cost of hire basis and was also a nonowned automobile within the meaning of American's policy (this finding is not an issue on this appeal); that LC 26999 provided primary insurance to Snyder and his employer and to Harry and Rachel Fox individually and doing business as Equip Rent; that LC 27001 provided specific excess insurance over LC 26999; that LC 27002 provided specific excess insurance over LC 27001 and LC 26999; and that American's policy was excess over Underwriters' policies LC 26999, 27001 and 27002 was not needed.

I

Underwriters contend that, since the ''other insurance'' clauses in American's policy and LC 26999 each claim to be excess insurance over the other, there is a conflict between the excess insurance clauses in the two policies and, therefore, the policies should be prorated according to their respective limits. We concur.

It is to be noted that, by its terms, LC 26999 is primary and not excess insurance as to Equip Rent, the named insured, and that the ''other insurance'' clause in LC 26999 applies only to ''additional insureds''—i.e., to permissive users. At the time LC 26999 was in force, section 415, subdivision (a) (2) of the Vehicle Code provided:

''[*Persons insured.*] Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured.'' It has been determined by earlier decisions that the provisions of section 415 become a part of every automobile liability insurance policy, and that any attempt of the insurer to issue a policy of insurance which does not cover an accident which occurs when a person other than the named insured is driving with the permission and consent of the named insured is invalid as against public policy. (*Interinsurance Exchange* v. *Ohio Cas.*

*Ins. Co.* (1962) 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640]; *American Automobile Ins. Co.* v. *Republic Indemnity Co.* (1959) 52 Cal.2d 507 [341 P.2d 675]; *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359]: *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]; *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.* (1962) 201 Cal.App. 2d 9 [20 Cal.Rptr. 73]; *Bonfils* v. *Pacific Auto Ins. Co.* (1958) 165 Cal.App.2d 152 [331 P.2d 766].)

These cases reflect the policy of this state that a permissive user of an automobile, and the victims of his negligence, should enjoy the protection of valid and collectible insurance. However, they do not solve the issue now before us. In the cited cases, the policies either did not refer to permissive users, or attempted expressly to exclude them from *any* coverage, and, thus, subverted the policy of the statute. But in the instant case, admittedly as we have pointed out, the public policy of the state has been fully complied with and the victims, as well as the driver Snyder, were fully covered by collectible insurance. The issue herein involved is not one of protecting Snyder and his victims, but merely of allocating the conceded coverage between or among several insurance carriers.

To construe the Underwriters' policy as giving primary coverage to Snyder, in the face of its express language to the contrary, is not compelled by any of these earlier cases. Each of them expressly notes the absence of any specific language establishing classes of coverage; in fact, in *Globe Indem. Co.* v. *Universal Underwriters Ins. Co., supra* (1962) 201 Cal. App.2d 9, at page 17, the court bases its decision, in part, on the fact that the insurer had not indicated an intention to do other than to cover all insureds in an equal fashion.

Further, to fail to give effect to the language in LC 26999 would render inoperative the express provisions of subdivision (d) of former section 402 of the Vehicle Code.[3] That clause, as we have pointed out above, gives to the owner a right of indemnity from the permissive user; and the owner's insurance carrier is, of course, subrogated to that right of indemnity. But if, as a matter of law and in face of a declared intention to the contrary, every owner's policy must grant primary coverage to the permissive user, the right

---

[3] Now Vehicle Code section 17153.

of indemnity becomes worthless, since it would be a right to indemnification by the carrier to itself. Only if the owner's policy may lawfully provide "excess" insurance to the permissive user, does the right of indemnity become meaningful, since the owner's carrier may then look to any other insurance which the permissive user might have. By construing LC 26999 according to its terms, we give effect both to the policy of section 415 and to that of former section 402.

Since the American policy and LC 26999 both purport to be excess insurance over the other, thus creating a situation impossible of literal resolution, the authorities hold that the two insurers prorate the loss in the proportion that their respective policy limits bear to each other—in this case 100 : 5 as to personal injury and 50 :5 as to the property damage. (*Farmers Ins. Exchange* v. *Continental Nat. Group* (1963) 213 Cal.App.2d 91 [28 Cal.Rptr. 613] ; *Continental Cas. Co.* v. *Hartford Acc. & Indem. Co.* (1963) 213 Cal.App.2d 78 [28 Cal.Rptr. 606] ; Note 69 A.L.R.2d 1122.)

## II

Since the American policy and LC 26999, thus construed and applied, cover the entire loss without exhausting the liability limit on either, no liability would attach under LC 27001 or LC 27002, whether or not the provision in the latter two policies excluding permissive users from coverage is valid. Hence we need not, in this case, decide the interesting question posed by such exclusion.

The record and briefs before us do not give sufficient data to enable us to compute the share of costs and interest which each party should bear in addition to the principal liabilities. Therefore, the judgment is reversed and the cause is remanded to the trial court with directions to enter a new judgment consistent with this opinion.

Burke, P. J., and Jefferson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 4, 1964.